UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN LOPEZ,

                Petitioner,

- *against* -

PHILIP D. HEATH,

                Respondent(s).

09 Civ. 8921 (CS) (PED)

**REPORT AND RECOMMENDATION**

TO:    THE HONORABLE CATHY SEIBEL,
        UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Benjamin Lopez ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, from his June 11, 2007 conviction entered in Westchester County Court (Loehr, J.). Petitioner was convicted, after a non-jury trial, of one count each of attempted assault in the first degree, criminal possession of a weapon in the third degree, and menacing in the second degree, and sentenced, *inter alia*, to concurrent terms of nine and one-half years imprisonment plus five years post-release supervision on the attempted assault count, three and one-half to seven years imprisonment on the weapons count, and one year imprisonment on the menacing count. This petition comes before me pursuant to an Order of Reference dated November 6, 2009. (Docket No. 3). For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND

### A.    The Crime, Pretrial Hearing, Trial, and Sentence[1]

---

[1] This synopsis is derived from Respondent's Affidavit in Opposition (hereinafter "Resp't Aff.") (Docket No. 6) and Respondent's Memorandum of Law & Respondent's Exhibits (hereinafter "Resp't Mem.") (Docket No. 7).

On September 19, 2005, Petitioner and Carl Carter ("Carter") were involved in a verbal and physical confrontation near the apartment building on Beach Street in the City of Yonkers where Carter and his wife and children resided. Petitioner was, at that time, the superintendent of that building, and resided himself in another building around the corner. That morning, at approximately 11:30 a.m., Carter and his wife walked to their parked car when Petitioner approached Carter and exchanged words with him. Moments later, Petitioner left the area and quickly returned with an approximately twenty-six inch long machete. Petitioner swung the machete twice at Carter, making contact on the second swing and inflicting a large cut on the side of Carter's face. Carter was able to wrestle control of the machete away from Petitioner, and after doing so, Carter's wife placed the machete in the trunk of the couple's car. Yonkers police officers then arrived at the scene and arrested Petitioner. After Petitioner had been read his Miranda[2] rights, Petitioner waived his rights and admitted to police that the machete was his.

Petitioner was later indicted on the following charges: attempted murder in the second degree (count one); attempted assault in the first degree (count two); assault in the second degree (count three); criminal possession of a weapon in the third degree (count four); menacing in the second degree (count five); and attempted assault in the first degree (count six).

By pretrial omnibus motion, Petitioner, through his counsel, moved to suppress identification testimony of witnesses, to suppress statements Petitioner made to law enforcement, and to preclude certain prior convictions of Petitioner from being introduced as prior bad act evidence in the event Petitioner testified in his defense. After pretrial hearings were held, Petitioner withdrew his motion to suppress his statement to police, and conceded that Carter and

---

[2] Miranda v. Arizona, 384 U.S. 436, 478 (1966).

2

his wife knew Petitioner and could identify him prior to the incident. The court then ruled that some of Petitioner's prior convictions could be admitted but not the underlying facts involved in those convictions.

During the course of a bench trial conducted in April, 2007, Carter and his wife testified for the prosecution. The People also introduced the machete recovered at the scene, photographs that had been taken by the police of Carter after the attack, and testimony of officers who responded to the scene. Petitioner did not testify, but did call his twenty-one year old daughter to testify as a witness for the defense. His daughter testified that she had witnessed the incident and that, while she saw her father leave and return with a machete, it was Carter who, unprovoked, had initiated the fight by walking up to Petitioner and attempting to gain control of the machete. The daughter also testified that Carter had accidentally cut himself with the machete in the process of trying to take it away from Petitioner.

After a four-day trial, the court, as finder-of-fact, acquitted Petitioner of counts one, two, and three of the indictment, and found Petitioner guilty of count four (criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(1)),[3] count five (menacing in the second degree, in violation of N.Y. Penal Law § 120.14(1)),[4] and count six (attempted

---

[3] "A person is guilty of criminal possession of a weapon in the third degree when . . . [h]e commits the crime of criminal possession of a weapon in the fourth degree . . . and has previously been convicted of any crime . . . ." N.Y. Penal Law § 265.02(1), *amended by* 2005 N.Y. Sess. Laws ch. 764 (2005). "A person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e possesses any . . . dangerous knife . . . with intent to use the same unlawfully against another . . . ." Id. § 265.01(2).

[4] "A person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon [or] dangerous instrument . . . ." N.Y. Penal Law § 120.14(1).

assault in the first degree, in violation of N.Y. Penal Law §§ 110.00, 120.10(1)).[5]

On June 11, 2007, Petitioner was sentenced, as a second violent felony offender,[6] to concurrent terms of the following: a determinate term of nine and one-half years imprisonment, plus five years of post-release supervision, for the assault conviction; an indeterminate term of three and one-half to seven years imprisonment for the weapons conviction; and a one year term of imprisonment on the menacing conviction.

## B. **Direct Appeal**

Petitioner, through counsel,[7] appealed his conviction to the New York State Appellate Division, Second Department, and raised the following two grounds: (1) the verdict was against the weight of the evidence; and (2) the sentence should be reduced in the interest of justice. (See Br. for Def.-Appellant (attached to Resp't Mem., at Ex. 1)). The Second Department affirmed the judgment in a written decision on July 8, 2008. People v. Lopez, 859 N.Y.S.2d 872 (App. Div. 2008). Petitioner then sought leave to appeal to the New York State Court of Appeals, and leave was denied on September 29, 2008. People v. Lopez, 11 N.Y.3d 790 (2008). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court, nor has he filed any motions in state court for collateral relief. (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, at 2-3 (hereinafter "Pet.") (unpaginated) (Docket No. 2)).

---

[5] "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.10(1). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." Id. § 110.00.

[6] The prior conviction that qualified Petitioner to be sentenced as a second violent felony offender was a June 27, 2002 conviction for assault in the second degree.

[7] Petitioner was represented by different counsel on appeal.

4

C.  ***Habeas Corpus* Proceedings**

By petition dated September 28, 2009, Petitioner filed for a writ of *habeas corpus*,[8] and has raised the following claims:

(1) "Court should vacate judgment to due [*sic*] hearsay evidence and false testimony, where Judge violated my constitutional rights by relying on the people's testimony and not mine;" and

(2) "Court should modify sentence due to harsh and cruelty, as well as, violations with sentencing guidelines."

(Id. at 4).

## III. DISCUSSION

A.  **Applicable Law**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

1.  ***Timeliness Requirement***

---

[8] The petition was timely filed. See 28 U.S.C. § 2244(d)(1)-(2).

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2. *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review),

7

thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995)), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

3.  ***Procedural Default***

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

9

### 4. *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's

case." or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.     Analysis of Petitioner's Claims**

   **1.     *Hearsay, False Testimony, and Weight of Evidence Claim***

The first ground raised in Petitioner's application for *habeas corpus* relief appears to assert three arguments: (1) the judgment of conviction was in error due to the fact that "hearsay evidence" was introduced, (2) the judgment of conviction was in error due to the fact that "false testimony" was introduced, and (3) the judge, as finder of fact, rendered an unconstitutional verdict by "relying on the people's testimony and not [Petitioner's]." (Pet. at 4). Respondent contends that the first two arguments are unexhausted and otherwise without merit, and that the third argument is not cognizable upon federal *habeas* review. (Resp't Mem., at 11-17).

It is clear from a review of Petitioner's direct appellate brief that no mention of improperly introduced evidence was raised therein. Petitioner's first claim on direct appeal attacked the conviction as against the weight of the evidence and, in support of this, pointed out alleged inconsistencies in the testimonies of certain witnesses. (See Br. for Def.-Appellant, at 12-24). However, the brief never alleged that improper "hearsay" evidence, or that "false" testimony, had been introduced at trial or had otherwise erroneously been relied upon by the fact-finder. These arguments are therefore unexhausted, and are moreover procedurally barred

11

pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c) (claims adequately based in the record but not argued on direct appeal may not be subsequently raised on collateral motion). Because Petitioner makes no argument for cause and prejudice, or a resulting fundamental miscarriage of justice, this Court may not review these claims.

Even if these claims were not procedurally barred, it would be appropriate to deny Petitioner's unexhausted arguments on their merits pursuant to 28 U.S.C. § 2254(b)(2). First, I note that Petitioner does not specify which evidence he alleges was improperly admitted hearsay or which testimony he alleges was false. My own review of the trial transcripts reveals no obvious errors. Given Petitioner's vague contentions, the state court's decision affirming Petitioner's judgment of conviction cannot be said to have unreasonably applied Supreme Court precedent. See, e.g., Hutcherson v. Burge, 2010 WL 1641366, at *8 (N.D.N.Y. Apr. 23, 2010) (state court decision did not unreasonably apply federal law where petitioner offered only conclusory statements). In any event, I note that it is well-settled that even erroneous evidentiary rulings by a state court will generally fail to rise to the level of a due process violation which would warrant federal *habeas corpus* relief. See Jenkins v. Bara, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) (internal citations omitted); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (erroneous evidentiary decisions made by a state court present issue of state law only, which is not cognizable upon federal *habeas* review); Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) ("habeas corpus relief does not lie for errors of state law, and that necessarily includes erroneous evidentiary rulings").[9] Accordingly, Petitioner's evidentiary arguments are

---

[9] Additionally, I note that, even prior to AEDPA's statutory changes to a federal court's standard of review,

> [T]he Supreme Court had a traditional reluctance to impose constitutional constraints

"plainly meritless" and should be denied on the merits under § 2254(b)(2).

Petitioner's remaining argument, that the judge, as finder of fact, rendered an unconstitutional verdict by "relying on the people's testimony and not mine," (Pet. at 4), may be liberally construed, see Haines v. Kemer, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests"), to argue that the verdict reached was against the weight of the evidence – a claim which Petitioner raised and exhausted on direct appeal.

However, it is well-established that a weight of the evidence claim concerns purely a question of state law, which accordingly precludes a federal *habeas* court from its review. See, e.g., McKinnon v. Superintendent, Great Meadows Corr. Facility, 355 Fed. Appx. 469, 475 (2d Cir. 2009) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Garrett v. Perlman, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (weight of evidence claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle, 502 U.S. at 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court

---

> on ordinary evidentiary rulings by state trial courts. The court has never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted.

Hawkins, 460 F.3d at 244.

determinations on state-law questions").

Furthermore, Petitioner's specific argument on direct appeal regarding his weight of the evidence claim largely concerned the credibility of the competing versions of events presented by Carter and his wife and by Petitioner's daughter. Such an argument is not reviewable within a petition for *habeas corpus* because it involves a credibility determination properly within the province of the fact-finder at trial. See Garrett, 438 F. Supp.2d at 470; see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for [review] on [habeas] appeal").

Accordingly, the claims set forth in Ground One of the petition – to the extent that I can ascertain what those claims are – should be denied.

### 2. *Harsh Sentence Claim*

The second ground raised in Petitioner's application for *habeas corpus* relief states that the "Court should modify sentence due to harsh and cruelty, as well as, violation of sentencing guidelines." (Pet., at 4). On direct appeal, Petitioner argued that the nine and one-half year sentence should be reduced on account of Petitioner's age, the emotional and financial support he provides his family, his employable nature, his stable home environment which includes a companion of twenty-five years, and the non-severe injuries suffered by the victim. (See Br. for Def.-Appellant, at 26-28). Respondent contends that this claim is not cognizable upon federal *habeas* review. (Resp't Mem., at 18-20).

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Contrary to Petitioner's assertion, the sentence imposed by the court in this case was within the range authorized by New York law. See N.Y. Penal Law § 70.04(2) (a sentencing

court "must impose a determinate sentence of imprisonment" where the defendant is found to be a second violent felony offender); id. §§ 70.02; 120.10 (classifying attempted assault in the first degree as a class C violent felony offense); id. § 70.04(3)(b) (term of sentence for a second felony offender convicted of a class C violent felony offense "must be at least seven years and must not exceed fifteen years"); see also id. § 70.45 (five year period of post-release supervision required when court imposes determinate sentence). Accordingly, Petitioner's sentence is within the range provided by state law, and therefore does not present a federal question reviewable by this Court. For the same reasons, Petitioner's arguments concerning the "harshness" of his sentence are also unreviewable. See Charles v. Fischer, 516 F. Supp.2d 210, 224 (E.D.N.Y. 2007) (collecting cases). Accordingly, the claims set forth in Ground Two should be denied.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Cathy Seibel at

the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: April 6, 2011
      White Plains, New York

                                      Respectfully Submitted,

                                      Paul E. Davison
                                    United States Magistrate Judge
                                    Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

            The Honorable Cathy Seibel
            United States Courthouse
            300 Quarropas Street
            White Plains, New York  10601

            Benjamin Lopez, *pro se*
            07-A-3564
            Sing Sing Correctional Facility
            354 Hunter Street
            Ossining, NY 10562

            John James Sergi, Esq.
            Office of the Westchester County District Attorney
            111 Dr. Martin Luther King, Jr. Blvd.
            White Plains, NY 10601